Josh D. Gruenberg, Esq. SB #163281
Pamela Vallero, Esq. SB #308301
Samuel Rotshtein, Esq. SB #355563
GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101-3542
TELEPHONE: (619) 230-1234
TELECOPIER: (619) 230-1074

Attorneys for Plaintiff
**JESSICA GARZA**

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JESSICA GARZA, an individual,<br><br>Plaintiff,<br><br>v.<br><br>FRONTIER AIRLINES, INC., an unknown business entity; and DOES 1 through 25, Inclusive,<br><br>Defendants. | Case No. **'25CV1544 JO    DEB**<br><br>**PLAINTIFF'S COMPLAINT FOR:**<br>1. Sexual Harassment [*42 U.S.C. 2000e-2(a)(1)*];<br>2. Retaliation [42 U.S.C. 2000e-3(a)];<br>3. Sexual Discrimination [42 U.S.C. 2000e-2(a)(1)].<br><br>**[JURY TRIAL DEMANDED]** |

COMES NOW THE PLAINTIFF, alleging against Defendants as follows:

## PRELIMINARY STATEMENT

1. Plaintiff brings this lawsuit alleging as against Defendants violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e, *et seq.*.

2. Pursuant to Title VII, it shall be an unlawful employment practice for an employer to … discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin. 42 U.S.C. § 2000e-2(a).

3. Plaintiff alleges that Defendant has systematically acted with the purpose and effect of denying to Plaintiff the same environment, terms, and conditions of employment as others similarly situated because of her gender/sex.

## THE PARTIES

4. Plaintiff JESSICA GARZA (hereinafter "Plaintiff") is a natural person who is, and at all relevant times was, a resident of the United States and domiciliary of the State of California, County of San Diego.

5. Defendant, FRONTIER AIRLINES, INC., (hereinafter "Defendant"), is a commercial airline servicing over 120 destinations within the United States and employs in excess of 3,000 people.

6. Defendant is incorporated in Delware with its principal place of business located in Denver, Colorado.

7. Defendant is an "employer" within the meaning of the statutes under which Plaintiff brings her claims.

## JURISDICTION & VENUE

8. The jurisdiction of this Court is founded upon 28 U.S.C. § 1331 because this action arises under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e5(f), as hereafter more fully appears.

9. Plaintiff is ignorant to the true names and capacities of the Defendants sued herein as DOES 1 through 25 and, therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege the true names and capacities when they are ascertained.

10. Plaintiff is informed and believes and thereon alleges that each fictitiously named Defendant is responsible in some manner for the occurrences herein alleged, and

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

Plaintiff's injuries and damages as herein alleged are directly, proximately and/or legally caused by Defendants.

11.    Plaintiff is informed and believes and thereon alleges that the aforementioned DOES are somehow responsible for the acts alleged herein as the agents, employers, representatives or employees of other named Defendants, and in doing the acts herein alleged were acting within the scope of their agency, employment or representative capacity of said named Defendant.

12.    Management-level employees of Defendant performed the tortious acts and omissions alleged herein. Defendant allowed and/or condoned a continuing pattern of retaliatory practices. Defendant also allowed/and or condoned a continuing pattern of unlawful practices in violation of the California Labor Code and California Government Code, and have caused, and will continue to cause, Plaintiff economic damage in an amount to be proven at trial.

13.    At all times mentioned herein, 42 U.S.C. § 2000e, *et seq.,* was in full force and effect and was binding on Defendants.

14.    The actions of Defendants against Plaintiff constitute unlawful employment practices in violation of 42 U.S.C. § 2000e, *et seq.,* as herein alleged, and have caused, and will continue to cause, Plaintiff emotional distress and loss of earnings.

15.    Defendants had actual and/or constructive knowledge of the tortious acts and omissions alleged and thereafter ratified said conduct by failing to reprimand or terminate.

16.    Defendants committed the acts alleged herein maliciously, fraudulently, oppressively, and with the wrongful intention of injuring Plaintiff, and acted with an improper and evil motive amounting to malice or despicable conduct. Alternatively, Defendants' wrongful conduct was carried out with a conscious disregard for Plaintiff's rights.

17.    Furthermore, Plaintiff alleges that the act(s) complained of herein took place within the above captioned judicial district.

18.    Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") and received her Right to Sue Letter on May 29, 2025. Attached here as

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

**Exhibit A** is a true and correct copy of that letter.

## SPECIFIC FACTUAL ALLEGATIONS

19. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

20. On or around June 20, 2018, Plaintiff was hired by FA as a Flight Attendant.

21. At all relevant times, Plaintiff performed her job duties in a diligent and competent manner, and was commended for doing so.

### Plaintiff Suffers Severe and Pervasive Sexual Harassment

22. On or around October 29, 2023, Plaintiff departed on a four-day work trip with colleagues Michelle Gorak ("Gorak"), Dominique Thorne ("Thorne"), and Kent Clark ("Clark"). While Plaintiff knew and had a healthy working relationship with Gorak and Thorne, this was the first time Plaintiff worked with Clark. Plaintiff and Clark were assigned to work together in the rear of the airplane servicing the back half of the airplane's passengers while Thorne and Gorak were assigned the front of the airplane, servicing the front half of the airplane passengers. For the majority of the in-flight time, Plaintiff and CLARK had little to no contact with the front-of-plane crew.

23. Initially, Plaintiff perceived Clark as friendly as he was very talkative and interested in getting to know Plaintiff. Clark was jovial and enthusiastic in his work performance and initiated conversation with Plaintiff. In fact, nothing about his initial conduct caused Plaintiff any concern. However, as the four-day trip proceeded, Clark's behavior began to change, leading Plaintiff to feel uncomfortable. For example, once the airplane departed, marking the first leg[1] of their four-day trip, Clark began asking Plaintiff questions about her sexuality and marital status once she became isolated from Gorak and Thorne. Plaintiff felt these questions were inappropriate and she attempted to avoid answering them. However, Plaintiff and Clark's close proximity on the airplane made this difficult.

---

[1] A "leg" is an airline industry term meaning a single one-way journey from point A to point B. While a leg can make up the entire journey, the term is usually used to refer to a single part of a larger trip. This four-day trip consisted of multiple legs wherein Plaintiff and Clark were the only ones assigned to work the rear of the plane the entire time.

Plaintiff responded to these inappropriate inquiries with sharp and concise responses, hoping that Clark would understand that she felt uncomfortable. Nonetheless, Clark continued to inquire into sexually suggestive topics with Plaintiff and they became increasingly intrusive and inappropriate.

24.    Clark began asking Plaintiff what type of men she liked and made efforts to engage in physical contact with Plaintiff. For example, during the first leg of Plaintiff's four-day trip, Clark impermissibly squeezed Plaintiff's biceps and said "I like women like you who work out," or words to that effect. In another incident, while navigating the crew galley in the rear of the airplane, Clark used the small space as an excuse to engage in physical contact by grabbing Plaintiff's waist with both of his hands as he passed by. In another incident, Clark wrapped his arms around Plaintiff and held her tightly to his body despite Plaintiff's obvious displeasure and efforts to get away from him.

25.    Plaintiff was in a state of dissociation during her exposure to Clark and his unlawful conduct. She began to feel disgusted with herself, her body would shut down when Clark would grab her waist or touch her inappropriately and she would become paralyzed. That night, Plaintiff had nightmares where she recalled Clark's conduct and woke up crying.

26.    On the second day of the trip on or around October 30, 2023, Plaintiff was eating dinner at the hotel with her colleague, Gorak. Clark joined them at the table and sat next to Plaintiff. Clark proceeded to wrap his leg around Plaintiff's leg under the table, and out of Gorak' sight, and moved up and down, in a rubbing motion. Again, Plaintiff reverted back to a place of paralysis and dissociation during this incident but managed to snap out of it for a moment while she got up and extricated herself from the situation.

27.    Plaintiff felt that Clark's unlawful sexual advances were becoming more pervasive which resulted in Plaintiff suffering from extreme anxiety. Plaintiff wanted to report Clark and his unlawful conduct to her Supervisor, Kemarra Dunn ("Dunn"), but was scared to do so because CLARK informed Plaintiff that he was good friends with Dunn. Plaintiff felt that Dunn would not believe her.

28.    Plaintiff was exposed and subjected to Clark's unlawful behavior throughout the duration

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

of the four-day trip. At one point, while Clark and Plaintiff were in the rear galley of the airplane. Clark pulled out his cellphone and began recording Plaintiff. Clark then used his cellphone to show Plaintiff a photograph of himself shirtless. Plaintiff tried to escape this interaction by making herself busy with work obligations, but the nature of working on an aircraft did not lend itself to many opportunities to get away from Clark. Eventually, Plaintiff would have to return to the galley—where Clark would be waiting for her.

29. Clark's unlawful and perverse actions were unrelenting throughout their trip together. Some of the other unlawful actions taken by Clark include, but are not limited to:

    a. telling Plaintiff that one of her colleagues, Brittany Cota, had a "nice ass," or words to that effect;

    b. divulging to Plaintiff that he had been physically and emotionally abused by his father growing up;

    c. showing Plaintiff photographs of female colleagues that he had taken with his cellphone;

    d. making sexually explicit comments regarding Plaintiff's ability to "suck" when Clark saw Plaintiff drinking a smoothie;

    e. telling Plaintiff that they should get married; and

    f. becoming angry at Plaintiff when she referred to him by his legal name, Alexander, and demanded that Plaintiff "show him respect," or words to that effect.

30. Following the trip, Plaintiff was so emotionally exhausted by Clark's actions and did not know how to proceed. The representation by Clark that he was close friends with Dunn and the psychological turmoil Plaintiff was now suffering from made Plaintiff feel that no one would believe her. Plaintiff chose to not say anything to Dunn or any other supervisor. Instead, Plaintiff attempted to suppress her experience and emotional suffering and move on with her life.

///

///

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

**Plaintiff Learns of Clark's Pattern and Practice of Sexually Harassing Female Colleagues and Files a Complaint with Defendant**

31.    In or around December 2023, Plaintiff was working another flight with colleague Mone Ponzie ("Ponzie"). Ponzie informed Plaintiff that while she was working a flight with Clark, she mentioned Plaintiff by name and Clark responded that he had worked with Plaintiff and that he found her annoying. Upon hearing this, Plaintiff told Ponzie that she did not want to comment on what Clark said as she had a bad experience with him and was attempting to forget about it. Figuring that Plaintiff's bad experience was of a sexually inappropriate nature, Ponzie opened up to Plaintiff and informed her that she too suffered a similar experience at the hands of Clark. As Ponzie recounted her experience with Plaintiff, she began to cry.

32.    In or around November 2023, Plaintiff was working a flight with her colleague, Linh Truong ("Truong"). Truong, noticing that Plaintiff was unusually quiet, asked Plaintiff if she was okay. Plaintiff informed Truong that she had a bad experience with Clark but did not want to talk about it. Upon hearing this, Truong informed Plaintiff that she too had a bad experience with Clark and that during a flight, Clark asked Truong what sort of men she liked and said to her "you should go out with older men since they have lots of experience already," or words to that effect. Truong also informed Plaintiff that Clark had sent her a message on VC View[2] while the two were staying at the same hotel during a layover. Clark asked Truong if she wanted to come to his room and "play games," or words to that effect. Truong also informed Plaintiff that Clark unconsentingly showed her photographs of a naked colleague and told Truong that he had slept with the woman in the photograph.

33.    Plaintiff was in disbelief to learn that her experience was not isolated but instead that she was one of many female colleagues sexually harassed by Clark. Plaintiff chose to report his conduct in an effort to prevent Clark from harassing more female colleagues and

---

[2] "VC View" is a messaging and scheduling cellphone application used by Defendant to communicate with its employees. VC View has a feature that allows Defendant employees to communicate over text message with other Defendant employees.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

herself.

34.     On or around December 13, 2023, Plaintiff submitted through FA's employee portal, ProSafety, a complaint regarding Clark's unlawful conduct, stating:

*"Had a four-day trip with flight attendant (FA) Kent Clark (Employee #435621). Employee was D position and I was B position. Throughout the trip, FA D asked what type of men I preferred as well as if I was single or dating anyone. I answered questions and thought nothing of the conversation. Later throughout the flight FA commented on FA Brittany Cota (Employee #436564) if I knew her and how she had as quoted "nice ass" and how he is a good christian man and made two passengers men apologize to her because he overheard them make inappropriate remarks regarding her gluteus maximus. Later throughout the trip flight attendant would touch and squeeze my biceps commenting how he liked women who worked out like me. In another encounter when I was flying flight attendant touched the sides of my waist. Including poking with his two hands my Serratus anterior region. I kept staying frozen and perplexed because I didn't know how to respond to these encounters. During my Detroit layover, I went to eat with FA Michelle Gorak (Employee #430637) and the FA joined sitting across from me. In one instance, he wrapped his legs around my legs. I kindly excused myself saying I was tired and needed to take off my makeup since I began to get uncomfortable with these advances. FA also claimed he had been with women younger than me and wasn't old when I had mentioned I would not date someone his age. I kept making uncomfortable expressions when touched several times since those incidents didn't feel right. Especially, after FA kept saying how he was very good-looking and many women were after him. He also kept showing numerous times pictures of his youg daughter to me. I tried to avoid interacting with FA by doing trash and staying away from him. In addition, I purposely put my hair up in a bun since FA claimed when it was down that if I kept it like that I would keep distracting him. After this trip, I kept having sleepless nights since I felt disgusted with myself for allowing myself to be touched numerous times by someone I felt was inappropriate. The remarks as well as the touches made me want to say something, but part of me kept saying maybe I should not because like he mentioned he is a well-liked man and claims he is Christian and a good man. He also stated to me that he was physically abused by his father and doesn't talk to most of his siblings. He also is best friends with FA Michelle Gorak (Employee #430637). So, while I wanted to tell the rest of the crew what was going on in the back of the plane I felt no one would believe me. I finally got the courage to write this and speak up after 1 month of feeling disgusted with myself when on my last few trips 2 flight attendants mentioned how FA made comments regarding having them come on over to his hotel room. As well as being touched. I felt that I should bring this up to the company regarding this employee. Tell my experience. I cannot speak for the rest of my female coworkers, but I hope that this might add some more evidence or shed light on this FA behavior. I do enjoy working here, but I did not feel safe and disgusted with myself for not having the courage to say something sooner. And I wanted to say I'm sorry for not having the courage to report this sooner, but I hope this can shed light on these incidents, thanks!"*

35.     The following day after submitting her complaint with Defendant, Plaintiff received an email from Dunn and Supervisor Lawrence Adler ("Adler"), requesting additional information concerning Plaintiff's complaint. Plaintiff complied and provided additional

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

information. Plaintiff did not hear from Dunn or Adler until the following month.

36.    In or around January 2024, Plaintiff was summoned to a meeting with Adler wherein Plaintiff reiterated Clark's unlawful conduct and that multiple flight attendants had similar inappropriate experiences with him. In response, Adler told Plaintiff "I hope that you never see that man in your life again," or words to that effect. Plaintiff was underwhelmed and confused by Adler's statement because Adler was in a position to ensure that Clark could never harass her again, and simply hoping that he would not harass her was insufficient to protect her from Clark. Plaintiff felt that Adler and Dunn were not taking her complaints seriously.

**Plaintiff Suffers Retaliation for Complaining About Clark's Unlawful Conduct**

37.    On or around February 25, 2024, Plaintiff was working a flight with Flight Attendant Clarence Hutchinson ("Hutchinson"). On information and belief, Hutchinson was friends with Clark and was aware of the complaint filed against him for his sexually harassing conduct. At some point during the flight. Plaintiff was seated in a passenger row, which is required when the airplane is taking off or landing, and was contemplating whether she wanted to eat her lunch or read her book. At that moment, Plaintiff heard a shutter noise. Plaintiff understood this noise to be that of a cellphone camera and turned around to see Hutchinson on his phone. Plaintiff believed that Hutchinson had taken a photograph of her but was unsure, and so she decided not to confront Hutchinson.

38.    In or around March 2024, Plaintiff was working a flight with Adler when Plaintiff briefly pulled out her personal cellphone to send a quick text message. After roughly ten seconds, Plaintiff put her cellphone back in her pocket and looked up to see Adler motioning to Plaintiff to put her phone away. Plaintiff apologized to Adler and promised that it would not happen again. Shortly thereafter, on or around March 28, 2024, Plaintiff attended a telephonic fact-finding meeting with Adler to discuss the phone incident. During that meeting, Plaintiff took responsibility for her lapse of judgment and ensured Adler that it would not happen again. Adler reassured Plaintiff that it was not a big deal and that many flight attendants use their cellphone while working.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

39.   In or around April 2024, Plaintiff underwent a pre-flight check[3] by Dunn which she failed for not having her FlyTab[4] charged to at least 90%.

40.   On or around April 11, 2024, Plaintiff received a probation notice by Defendant, indicating that her employment would be terminated if she were to be found in violation of a company policy within the next year. Plaintiff felt that her probation was unfair and unwarranted, especially in light of Adler telling her that many flight attendants had been caught using their cellphones while working and that it was not a big deal. Additionally, Plaintiff had never heard of a colleague being placed on probation for failing a pre-flight check as the typical reprimand is merely a warning.

41.   On or around April 14, 2024, Plaintiff told her colleague and friend, Gorak, of her experience with Clark. Plaintiff informed Gorak that it took her a long time to tell anyone because of the emotional turmoil the experience had caused her. In response, Gorak informed Plaintiff that Clark had asked her for a character letter and when Gorak inquired into why he needed a character letter, Clark told her that Plaintiff had reported him for sexual harassment and said "Jessica has nothing on me because at the end of the day it would just be a he-said-she-said situation and if I am going down I am taking that bitch down with me." Plaintiff interpreted Clark's comment as a threat that he will lodge fraudulent complaints with Defendant and use his friendship with Dunn to facilitate her termination.

42.   On or around April 18, 2024, merely a few days after learning of Clark's comment to Gorak, Plaintiff received an email from Adler, instructing her to attend a fact finding meeting in regards to a photograph that emerged of Plaintiff purportedly sleeping on an airplane. Plaintiff was informed the photograph was taken on February 25, 2024, the day Plaintiff recalled hearing the camera shutter sound of Hutchinsons cellphone. Defendant's policy required that an employee accused of a violation is provided with the

_____

[3] A "pre-flight check" is a procedure wherein a supervisor ensures all flight attendants are in compliance with company policy. Pre-flight checks typicall take place after airplane boarding but prior to take-off.
[4] A "FlyTab" is a touch-screen device used by Defendant Flight Attendants to assist in the successful operation of a flight. The FlyTab is used to facilitate in-flight passenger purchases.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

name of the accuser and any substantiating evidence of the violation. Despite Defendant's disclosure policy and an explicit invocation of her right to know the accuser's identity, Plaintiff was only provided with the date the photograph was taken. Plaintiff reasonably believed that her accuser was Clark, and that Defendant's failure to provide his identity was an effort to conceal its retaliatory conduct.

43.    On or around April 22, 2024, Plaintiff's union representative, DeAysa Ross ("Ross"), entered the email chain and once again reiterated Plaintiff's request and right to know her accuser. Once again, Defendant did not disclose who it was. Following Ross' initial request for more information, Plaintiff's union representatives Ross and Jeremy Laurrell ("Laurrell") sent a series of email requests which all went unanswered until on or around May 7, 2024, when Adler informed Plaintiff's union representatives that he got the photograph from **Dunn**. Plaintiff reasonably believes that Dunn lied about the origins of the photograph because Plaintiff's union representative, Laurrell, had access to the flight logs and confirmed that Dunn was not present when the photograph was purportedly taken. Laurell then requested, once again, that the identity of the true accuser be revealed to Plaintiff in accordance with Defendant's policy.

44.    On or around May 14, 2024, Plaintiff attended a telephonic fact-finding meeting. Present were Plaintiff's union representatives, Ross and Laurrell, as well as Adler, Dunn, and Defendant's Regional Manager, Michael McAllister. During this meeting, Defendant told Plaintiff that her accuser was Hutchinson and that he showed the photograph to Dunn on or around March 25, 2024, while the two were on a flight together. This was another lie by Dunn because: (1) Plaintiff's union representatives discovered and told Plaintiff that after looking through flight logs, Hutchinson's name did not appear on the flight wherein Dunn claimed Hutchinson approached her and furnished the photograph, and (2) Plaintiff was informed by her colleague, Laura Harding, that Hutchinson wanted to talk to Plaintiff and explain that he never showed Dunn the photograph and that he knew Plaintiff was not sleeping when the photograph was taken. Furthermore, Hutchinson confirmed that the only person he ever showed the photograph to was **Clark**.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

45. Additionally, during the fact-finding meeting on or around May 14, 2024, Plaintiff was accused of sleeping on two separate flights and was shown two photographs where she was allegedly asleep on an airplane. On information and belief, Dunn and/or Clark cropped and edited one photograph to create the appearance of two separate incidences. Plaintiff told Dunn that her conduct and alteration of critical evidence was retaliatory. In response, Dunn told Plaintiff "you can't claim retaliation Jessica because you never had any issues with Clarence Hutchinson," or words to that effect. Plaintiff found Dunn's comment enlightening as it appeared to Plaintiff that Dunn contemplated and crafted a lie about the true origin of the photograph in anticipation of such a valid assertion by Plaintiff.

**Plaintiff is Ultimately Terminated in Retaliation For Complaining About Clark's Unlawful**

**Conduct**

46. On or around May 16, 2024, Plaintiff received an email from Adler, stating that her employment was terminated, effective immediately. On information and belief, Defendant closed its investigation into Clark and cleared him of any wrongdoing shortly after Plaintiff was terminated.

47. Defendant's blatant and vehement discrimination and retaliation directed towards Plaintiff and the adverse employment actions she suffered herein, have caused, and will continue to cause, extreme emotional distress, anxiety, loss of sleep, and physical and mental pain and anguish. As a further result of Defendant's unlawful actions, Plaintiff has suffered, and continues to suffer, from loss of earnings, employment benefits, and employment opportunities.

**FIRST CAUSE OF ACTION**

**SEXUAL HARASSMENT IN VIOLATION OF TITLE VII**

**[42 U.S.C. § 2000e-2(a)(1)]**

48. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

49. At all times relevant hereto, Plaintiff was an employee of Defendant and a member of a

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

protected class under Title VII of the Civil Rights Act of 1964, as amended, 4.2. U.S.C. § 2000e, et seq.

50.  During the October 2023 work trip, Defendant's employee, Kent Clark, subjected Plaintiff to severe and pervasive unwelcome sexual harassment, including but not limited to: unwanted physical touching of Plaintiff's body; making sexually explicit comments about Plaintiff's appearance and body; asking inappropriate questions about Plaintiff's sexuality and dating life; rubbing Plaintiff's leg under the table without consent; showing Plaintiff shirtless photographs of himself; and making sexually suggestive remarks throughout the four-day work trip.

51.  Kent Clark's conduct was unwelcome and was directed at Plaintiff because of her sex.

52.  Kent Clark's conduct was sufficiently severe and pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive, hostile, and offensive work environment that no reasonable person should be expected to endure.

53.  The sexually harassing conduct unreasonably interfered with Plaintiff's work performance and created a work environment that a reasonable woman would consider intimidating, hostile, and abusive.

54.  Defendant knew or should have known of the sexually harassing conduct directed toward Plaintiff, as Kent Clark was Defendant's employee acting within the scope of his employment during work hours when Plaintiff was sexually harassed.

55.  Despite having actual or constructive knowledge of Kent Clark's sexually harassing conduct, Defendant failed to take prompt and appropriate corrective action to stop the harassment and prevent its recurrence.

56.  Defendant's conduct constitutes unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended 42 U.S.C. § 2000e-2(a)(1).

57.  As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and continues to suffer damgaes including but not limited to: emotional distress, humiliation, anxiety, loss of enjoyment of life, damage to professional reputation, and other compensable losses.

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

## SECOND CAUSE OF ACTION

### RETALIATION IN VIOLATION OF TITLE VII

### [42 U.S.C. § 2000e-3(a)]

58.  Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

59.  Plaintiff engaged in activity protected under Title VII when she filed an internal complaint with Defendant in December 2023 regarding Kent Clark's sexual harassment, as she reasonably and in good faith believed that Clark's conduct violated federal employment discrimination laws.

60.  Plaintiff's opposition to Kent Clark's sexually harassing conduct was based on her reasonable good faith belief that such conduct constituted unlawful sexual discrimination prohibited by Title VII.

61.  Following Plaintiff's protected activity, Defendant subjected Plaintiff to a pattern of adverse employment actions in retaliation for her complaint, including but not limited to: placing Plaintiff on probation without legitimate justification; fabricating accusations that Plaintiff was sleeping during flights; creating and disseminating doctored photographs purporting to show Plaintiff sleeping on duty; subjecting Plaintiff to heightened scrutiny and discipline not applied to similarly situtated employees; and ultimately terminating Plaintiff's employment in May 2024.

62.  Each of the adverse employment actions taken by Defendant constituted materially adverse action that would dissuade a reasonable employee from engaging in protected activity under Title VII.

63.  Defendant's adverse employment actions were taken because of Plaintiff's protected activity, as evidenced by the temporal proximity between Plaintiff's December 2023 internal complaint and the subsequent pattern of retaliation, the pretextual nature of Defendnt's stated reasons for the adverse actions, and Defendant's departure from standard employment practices in its treatment of Plaintiff.

64.  But for Plaintiff's protected activity of complaining abouat sexual harassment, Defendant

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101

would not have subjected Plaintiff to the adverse employment actions described herein.

65. Defendant's conduct constitutes unlawful retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a).

66. As a direct and proximate result of Defendant's retaliatory conduct, Plaintiff has suffered and continues to suffer damages including but not limited to: loss of wages and benefits, loss of future earning capacity, emotional distress, humiliation, damage to professional reputation, and other compensable losses.

## THIRD CAUSE OF ACTION

## SEX DISCRIMINATION IN VIOLATION OF TITLE VII

## [42 U.S.C. § 2000e-2(a)(1)]

67. Plaintiff re-alleges and incorporates by reference each and every allegation contained in the preceding paragraphs as though fully set forth herein.

68. Defendnat discriminated against Plaintiff in the terms and conditions of her employment because of her sex by subjecting her to sexual harassment and by failing to provider her with a workplace free from sex-based discrimination.

69. Defendant treated Plaintiff differently than similarly situated male employees by tolerating sexual harassment directed at her and by failing to take appropriate remedial actions when she reported the harassment.

70. Defendant's discriminatory treatment of Plaintiff was motivated by her sex and constituted disparate treatment based on a protected characteristic.

71. Defendant's conduct violated Title VII's prohibition against sex discrimination in employment, as codified at 42 U.S.C. § 2000e-2(a)(1).

72. As a direct and proximate result of Defendnt's discriminatory conduct, Plaintiff has suffered and continues to suffer damages including but not limited to: loss of wages and benefits, emotional distress, humiliation, and other compensable losses.

**WHEREFORE,** Plaintiff prays for the following relief:

1. For compensatory damages, including loss of wages, promotional opportunities, benefits, and other opportunities of employment, according to proof;

2.    For special damages in an amount according to proof;

3.    For physical, mental and emotional distress damages;

4.    For back pay, front pay, and other monetary relief;

5.    For punitive damages against Defendants in an amount necessary to make an example of, and to punish, Defendants, and to deter future similar misconduct;

6.    For costs of suit, including attorney fees as permitted by law;

7.    For an award of interest, including prejudgment interest, at the legal rate as permitted by law;

8.    For such other and further relief as the Court deems proper and just under all the circumstances.

**PLAINTIFF JESSICA GARZA** demands a jury trial on all issues in this case.

DATED: June 17, 2025                          **GRUENBERG LAW**

JOSH D. GRUENBERG, ESQ.
PAMELA VALLERO, ESQ.
SAMUEL ROTSHTEIN, ESQ.
Attorneys for Plaintiff,
**JESSICA GARZA**

GRUENBERG LAW
2155 FIRST AVENUE
SAN DIEGO, CALIFORNIA 92101